UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY LEAH D., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Case No.: 23-cv-0471-KSC <br><br> **ORDER REVERSING SOCIAL SECURITY ADMINISTRATION DISABILITY DETERMINATION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** <br><br> **[DOC. NOS. 10, 13]** |

**I.      INTRODUCTION**

Plaintiff Jenny Leah D. seeks review of defendant Martin O'Malley, the Commissioner of Social Security's, denial of disability benefits. Doc. No. 1. The parties filed opening and responsive briefs. Doc. Nos. 10, 13. Plaintiff elected not to file a reply. For the reasons discussed below, the Court reverses defendant's denial of benefits and remands for further administrative proceedings.

//
//
//
//
//

## II. PROCEDURAL BACKGROUND

Plaintiff applied for disability benefits, claiming disability beginning May 1, 2016. AR 55.[1] The Social Security Administration ("SSA") denied plaintiff's claim and denied reconsideration. AR 110-23, 125-38. Plaintiff requested and obtained an Administrative Law Judge ("ALJ") hearing. AR 153-54, 193-215. Following the hearing, the ALJ issued a decision finding plaintiff not disabled. AR 55-71. The Appeals Counsel denied plaintiff's request for review and this case followed. AR 1-2; Doc. No. 1.

## III. SUMMARY OF ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since May 1, 2016. AR 57.

At step two, the ALJ found the following severe medically determinable impairments: fibromyalgia, trochanteric bursitis of the hips post status post IT band reconstruction and piriformis release, costochondritis, osteoarthritis affecting the shoulders, incipient degenerative disc and joint disease with history of annular tear, and obesity. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the SSA's Listing of Impairments. AR 60.

Before proceeding to step four, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform "sedentary work"[2] except:

---

[1] "AR" refers to the Administrative Record lodged on May 15 and August 28, 2023. Doc. Nos. 7, 12. The Court's citations to the AR use the pagination on the original document rather than the page numbers designated by the case management/electronic case filing system ("CM/ECF"). For all other documents, page citations refer the CM/ECF assigned page numbers.

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is

2

> [S]he can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. [She] can occasionally balance, stoop, and crouch. [She] can rarely kneel or crawl. [She] can frequently reach bilaterally. [She] cannot perform work at unprotected heights. [She] requires convenient restroom access. The claimant needs to use a walker or cane to get to and from the work area.

AR 60.

At step four, the ALJ concluded plaintiff could not perform past relevant work. AR 65.

At step five, the ALJ accepted Vocational Expert opinion testimony and concluded "[c]onsidering [plaintiff's] age (currently 39 years old), education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including Document Preparer (DOT 249.587-018); Food and Beverage Order Clerk (DOT 209.567-014); Call Out Operator (DOT 237.367-014); and Dowel Inspector (DOT 669.687-014). AR 66.

**IV.   STANDARD OF REVIEW**

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotations omitted), superseded by regulation on other grounds as stated in *Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020). It is "more than a mere scintilla, but less than a

---

defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

preponderance . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison*, 759 F.3d at 1010. "[I]f evidence exists to support more than one rational interpretation, [then the Court] must defer to the [SSA]'s decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)). The Court will not reverse if any error is harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination and that a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination.") (internal citations and quotations omitted).

## V. DISCUSSION

Plaintiff raises two issues: (1) "whether the Appeals Council properly denied [plaintiff's] right to judicial review;" and (2) "whether the ALJ articulated clear and convincing reasons, supported by substantial evidence, for rejecting [plaintiff's] subjective complaints of pain and level of limitation." Doc. No. 10 at 4.

### A. Plaintiff's Case is Properly Before the Court

Plaintiff contends "[t]he Appeals Council erred by denying [plaintiff] the right to court review" after committing multiple errors at the administrative level. *Id.* at 8. This issue is now moot because the Appeals Council has since extended plaintiff's deadline to seek judicial review and defendant "does not dispute that plaintiff's case is properly before this Court." Doc. No. 13 at 1; AR 1369.

### B. The ALJ Failed to Properly Evaluate the Subjective Symptom Testimony

Plaintiff contends "[t]he ALJ [failed] to articulate clear and convincing reasons, supported by substantial evidence, for rejecting [plaintiff's] subjective complaints of pain

and level limitation." Doc. No. 10 at 9.  The Court agrees the ALJ's opinion does not meet the applicable standards.

Evaluating a claimant's subjective symptom testimony requires a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

### 1. Plaintiff's Statements

In 2020, plaintiff was 39 years old, 5'2" tall, and 185 pounds. AR 1354-55. She had bilateral hip surgeries about two years apart. AR 85-86. The second set of surgeries took place after plaintiff stopped working her two nursing jobs due to hip pain. AR 78, 80-81. On May 24, 2016, she underwent bursectomy and piriformis release of her left hip, and on July 14, 2016, she underwent bursectomy and IT band lengthening of her right hip. AR 323-34. She alleges ongoing limitations due to hip bursitis, fibromyalgia, and obesity. AR 285-293; 320-21.

In her September 25, 2018 Function Report plaintiff reported:

- "Severe pain" limits her ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, stair-climb, remember, complete tasks, concentrate, and use her hands (AR 290);

- Her ability to dress, bathe, shave, and care for her hair are limited (AR 286);

- She "spend[s] most days in bed with [an] ice pack (AR 290) and "[t]here are many days [she is] unable to get out of bed" (AR 289);

- She has "difficulty sometimes walking" and "need[s] assistance getting in and out of . . . vehicles" due to hip pain (AR 286);

- She can walk 100 feet before requiring rest (AR 290);

- She uses a walker, cane, and/or brace/splint "when in pain or unable to walk" (AR 291);

- She is "in so much pain [she] toss[es] and turn[s] all night" (AR 286);

- She leaves her home every day by either walking, driving, or riding in a car (AR 288);

- She shops for food, clothing, or home items 1-2 times a week (*Id.*);

- She goes to "church, out to dinner/lunch," and stores "on a regular basis" (AR 289); and

- She is "not able to go out at night . . . [and is] not able to go out for more than a few hours at a time because of pain" (AR 290).

At the ALJ hearing plaintiff offered testimony regarding how pain limits her:

- She had bilateral hip surgeries about two years apart. The first set of surgeries alleviated her pain for about a year before it returned. The second set of surgeries only relieved her pain for six to eight months (AR 85-86);

- She has "tried multiple physical therapy options and so far nothing has relieved the pain" (AR 82);

- She alleviates her pain with Percocet, "ice packs and heat," . . . "stretching as best as [she] can," and topical sprays and ointments (AR 83-84);

- She "normally start[s] her day with ice packs as soon as [she] get[s] up" (AR 86);

- "[W]hen she has a difficult day" all she can do to alleviate the pain is lay in her bed with ice packs or heat (AR 83);

- She has used a walker "very consistently because [she's] fallen multiple times over the last couple years" (AR 82-83);

- She can only "take a few steps" without her walker due to body stiffness and severe aches. Otherwise she has to use a walker or "hold[] onto [her] husband or kids" (AR 87);

- "[S]ometimes she can move around [on her feet] for ten to 15 minutes [before she has] to sit . . . down again. Other days [she] will try and really push [herself] and do maybe 45 minutes to an hour of gentle moving" (AR 93);

- She does not think she can perform a sedentary job because "on top of the pain issue, [she] also ha[s] [Irritable Bowel Syndrome] and must use the restroom "anywhere from five to ten times" daily (AR 88-89);

- She does not think she can perform a job that allows her to shift from sitting to standing because "[a]lmost on a daily basis [she is] so upset or [her] pain is so high that [she] cr[ies] . . . [and] it's very difficult for [her] to hold onto a conversation because of the distraction of being in pain" (AR 93-94);

- She can "[c]omfortably [lift and carry] between ten and 15 pounds" (AR 94);

- Her husband typically does the household chores, grocery shopping, and cooking (AR 94-95);

- She has special equipment to help her with bathing and her husband helps her with dressing (AR 95); and

- She doesn't drive very often because the car's vibration "sets [her] nerve pain off" (AR 84-85).

The ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 61; *accord Vasquez*, 572 F.3d at 591 (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries could

reasonably be expected to produce *some* of the pain and other symptoms alleged") (internal quotation omitted).

The ALJ found plaintiff's statements not fully credible because her "statements about the intensity, persistence and limiting effects of these symptoms are not entirely consistent with, or fully substantiated by, the medical evidence and other evidence in the record for the reasons explained in this decision." AR 61. The ALJ next summarized the medical evidence and weighed the medical opinions. AR 61-65. He then offered the following statement in support of his RFC finding:

> The undersigned finds [plaintiff] has the above [RFC] assessment, which is supported by her history of hip surgeries with imaging showing ongoing joint disorders. She also has been diagnosed with fibromyalgia and has elevated BMI equating to obesity, which has been considered in combination with her joint disorders in affecting functioning. However, she has not consistently presented with abnormalities in gait throughout the record, contrary to her allegations. Nonetheless, the [RFC], as set forth above, expressly makes provision for use of a cane or walker in ambulating to or from the work area. The [RFC] also includes significant postural and reaching limitations that further address the claimant's fibromyalgia, hip impairments post surgeries, and her reported pain and movement limitations, all as discussed above. Treatment has been conservative since her surgeries. The claimant is able to handle funds, and has reported multiple activities, including driving, reading, gardening, and interacting with her animals (dogs, horse and chickens) that are activities consistent with a sedentary level of work.

AR 65, citing AR 72-109, 265-72, 285-93.

Defendant contends the ALJ relied on "objective medical evidence and overall conservative treatment," as well as "activities inconsistent with disabling limitations" to support discounting plaintiff's credibility. Doc. No. 13 at 4. As discussed below, these reasons are not supported by substantial evidence.

### 2. Activities of Daily Living

The ALJ concluded plaintiff "is able to handle funds, and has reported multiple activities, including driving, reading, gardening, and interacting with her animals (dogs,

horse and chickens) that are activities consistent with a sedentary level of work." AR 66, citing AR 72-109, 265-72, 285-93.

An ALJ may consider the claimant's daily activities in making his credibility determination. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (claimant's daily activities relevant to evaluating symptoms). A claimant's daily activities must be inconsistent with the claimed limitations in order to have any bearing on the claimant's credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The daily activities the ALJ relied on to discount plaintiff's statements are not inconsistent with her claimed limitations. An individual who experiences chronic pain and mobility issues may be able to manage simple and short daily tasks like driving, reading, gardening, and interacting with household pets, but unable to maintain full-time employment. *See, e.g., id. at 722* (ALJ's rejection of claimant's credibility based on daily activities is unsupported by the record where the claimant's "activities were sporadic and punctuated with rest."); *Fair v. Bowen*, 885 F.2d 594, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a), ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it may be impossible to periodically rest or take medication."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987)(noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

Moreover, the ALJ ignored evidence that plaintiff sometimes experiences such severe pain she is unable to get out of bed. Plaintiff reported "[t]here are many days I am unable to get out of bed." AR 289. She then testified "[t]here's days I don't leave my bed all day long because I'm in so much pain." AR 89. These statements are corroborated by the medical record. *See, e.g.,* AR 758 ("Most days are spent sitting or lying in bed."); AR 834 ("I have been using the flector patches and . . . lidocaine creams and nothing seems to help. My shoulders and hips are absolutely so painful I'm unable to function. I've been in bed now for a couple days and I'm so swollen it hurts to walk."); AR 854 ("I've been in

bed all week and unable to leave my house at all."); AR 1120 ("I haven't been able to even get out of bed since Friday. I've been on ice packs and spraying myself with pain sprays every 1-2 hours."); AR 1124 ("I am in agony. I started taking dilaudid 2 mg on Friday and it is absolutely not working. I have not been able to do more than lay in my bed on ice or sit up briefly on the couch with ice. It's almost been too much to walk to the bathroom" and requesting a prescription change.); AR 1320 ("I'm in bed today and I am in so much pain. . . . It's been so difficult to do anything.") The ALJ's omission of this probative evidence constitutes error. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ cannot justify a credibility finding "by ignoring competent evidence in the record that suggests an opposite result"); *Diedrich v. Berryhill*, 874 F.3d 634, 642-43 (9th Cir. 2017) (finding legal error when an ALJ discredited the plaintiff based on her daily activities of maintaining personal care, caring for her cat, performing house chores, shopping, paying bills, and using a checkbook, while ignoring other evidence of her daily limitations).

Thus, the ALJ's reliance on plaintiff's daily activities is not a clear and convincing reason supported by substantial evidence to discredit her testimony about her subjective symptoms.

### 3. Conservative Treatment

The ALJ also concluded plaintiff's "[t]reatment has been conservative since her surgeries." AR 65.

In some instances, evidence of conservative treatment can be a sufficient basis to discount a claimant's testimony regarding the severity of an impairment. *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995). Here, however, substantial evidence does not support the ALJ's conclusion plaintiff has a conservative treatment history. Plaintiff had four surgical procedures on her hips: bilateral IT band and trochanteric bursectomy in 2014 and bursectomy and piriformis release of her left hip followed by bursectomy and IT band lengthening of her right hip in 2016. AR 323-34, 330, 590. These procedures only partially reduced plaintiff's low back and hip pain. AR 590. April 2019 treatment notes reflect that while plaintiff experienced 50% symptom relief during the first year after her surgeries,

her "symptoms [had] since completely returned[,] . . . [are] debilitating[,] . . . [and plaintiff] has had no relief with conservative care, including anti-inflammatories, rest, physical therapy and activity modification. . . . nothing alleviates her symptoms." AR 884-85.

Her treating physician did not believe she was a candidate for further surgery even though "she is significantly limited in her daily life due to her hips . . . [because] it is possible that any further surgery . . . would not improve her condition and in fact could make her worse." AR 888. Plaintiff was prescribed the maximum dosage of Percocet; however, even that was did not control her pain. AR 585, 957. She has also "had almost 30 steroid injections in the hip" and 13 trochanteric and piriformis injections, which provided little to no pain relief. AR 557, 590. In 2019, she received steroidal injections and physical therapy for her shoulder, but they made her pain worse. AR 783. Following that she declined more injections, which were determined to be failed treatment options. AR 803, 915.

In sum, the record indicates four surgeries and a multitude of conservative treatments have not controlled plaintiff's pain and she is not a candidate for further surgery. Thus, the ALJ's credibility finding based on a conservative treatment history is not supported by the record. *See Zamora v. Astrue*, No. 5:09-CV-3273-JF/PVT, 2010 WL 3814179, at *8 (N.D. Cal. Sept. 27, 2010) (ALJ erred in discounting plaintiff's credibility due to conservative treatment history where his physician ordered conservative treatment because "surgery was not a viable option.")

### 4. Objective Medical Evidence

The ALJ referred to medical evidence, including imaging indicating "mild" findings, the lack of documentation for a consistent need for a cane or walker, and limited documentation of gastrointestinal issues, to discredit plaintiff's symptom testimony. AR 62-63.

An ALJ may consider whether the alleged symptoms are consistent with the medical evidence as one factor in his evaluation. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). The ALJ, however, cannot "cherry-pick" certain portions of medical

evidence found in the record to support an adverse credibility finding when there is other contradicting evidence in the record suggesting the opposite. *See Gallant*, 753 F.2d at 1456. Limited documentation regarding plaintiff's need for an ambulatory device and gastrointestinal distress issues are not substantial evidence to contradict her testimony she spends many days confined to bed due to pain.

Furthermore, as already discussed, the other reasons proffered for discounting plaintiff's testimony are not supported by substantial evidence and the "lack of medical evidence cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also* Bunnell v. Sullivan, 947 F.2d 341, 346–47 (9th Cir. 1991) (same).

In sum, the Court does not find the objective medical evidence the ALJ relied on constitutes a clear and convincing reason to discredit plaintiff's subjective symptoms.

## VI. REMAND IS APPROPRIATE

The ALJ's errors were not harmless because they potentially resulted in an RFC that did not account for absenteeism and other limitations caused by plaintiff's pain.

The Court must next determine whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Trevizo*, 871 F.3d at 682. Because there are arguably inconsistencies between plaintiff's Function Report and hearing testimony, it is not clear that the ALJ was required to find plaintiff disabled. Further administrative proceedings are, therefore, appropriate.

//
//
//
//
//
//
//

## VII. CONCLUSION

Based on the foregoing, the Court reverses the SSA's disability determination and remands for further proceedings.

**IT IS SO ORDERED.**

Dated: March 15, 2024

Hon. Karen S. Crawford
United States Magistrate Judge